**SO ORDERED.**

**SIGNED this 20th day of April, 2015.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Alice Marie Nightingale, | ) | Case No. 13-10834 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| Alice Marie Nightingale, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 13-02060 |
| | ) | |
| North Carolina State Education | ) | |
| Assistance Authority, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

MEMORANDUM OPINION DENYING SUMMARY JUDGMENT

This case is before the Court on the Defendant's Motion for Summary Judgment [Adv.

No. 13-02060, Doc. #19] filed on November 3, 2014 [Adv. No. 13-02060, Doc. #19] (the

"Motion for Summary Judgment").  The Defendant, the North Carolina State Education

Assistance Authority ("NCSEAA"), also filed a Brief in Support of its Motion for Summary

Judgment on November 3, 2014 [Adv. No. 13-02060, Doc. #20] ("NCSEAA's Brief"). Plaintiff Alice Marie Nightingale ("Plaintiff" or "Nightingale"), filed a Brief in Opposition to the Motion for Summary Judgment on December 5, 2014 [Adv. No. 13-02060, Doc. # 21] (the "Response").[1] Pursuant to Local Rule 7007-1(d), the Court has considered the Motions on the pleadings, admissible evidence in the record, and motion papers and briefs without hearing or oral argument. On April 1, 2015, the Court entered its Amended Order granting the Motion for Summary Judgment in part, and denying the remainder of the motion.[2] This opinion sets forth the bases for the Court's ruling.

## JURISDICTION

This Court has jurisdiction pursuant to 11 U.S.C. § 1334 because this matter arises in a case under title 11. See Harvey v. Dambowsky (In re Dambowsky), Case No. 13-81410, Ap. No. 14-09010, 526 B.R. 590, (Bankr. M.D.N.C. Jan. 6, 2015). This Court has statutory authority pursuant to 11 U.S.C. § 157 and Local Rule 83.11 for the United States District Court for the Middle District of North Carolina. Finally, this Court has constitutional authority to enter final order in this dischargeability action. See In re Dambowsky, 526 at 590.

## FACTS

1. On June 25, 2013, Plaintiff Alice M. Nightingale filed a voluntary petition (the "Petition") under Chapter 7 of the United States Bankruptcy Code (the "Code") in this Court [Bankr. No. 13-10834, Doc. #1].

---

[1] Although the Response was untimely as initially filed, the Response shall be allowed and will be considered by the Court as ordered on January 21, 2015 in the Court's Order on Show Cause. [Adv. No. 13-02060, Doc. # 27].

[2] There were no factual disputes concerning the status of the Debts as "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit . . . ." 11 U.S.C. § 523(a)(8)(A)(i). Therefore, the Court granted Defendant partial summary judgment stating the Debts did qualify as Debts exempted from discharge unless it would impose an undue hardship on the debtor.

2.      On October 7, 2013, the Court issued an order granting the Plaintiff a discharge (the "Discharge") pursuant to Section 727 of the Code [Bankr. No. 13-10834, Doc. #20].  On October 15, 2013, the Court issued a Final Decree closing the Debtor's Chapter 7 case [Bankr. No. 13-10834, Doc. #22].  The Final Decree was then vacated on October 18, 2013 due to the Plaintiff's forthcoming adversary proceeding regarding the Debts [Bankr. No. 13-10834, Doc. #24].

3.      On October 24, 2013, the Plaintiff  commenced the current adversary proceeding by filing a Complaint [Adv. No. 13-02060, Doc. #1] (the "Complaint") seeking a discharge of student loan debts (the "Debts") held by the Defendant and College Foundation, Inc. ("CFI"). On October 30, 2013, CFI assigned all of its rights and interests in the Debts to the Defendant [Adv. No. 13-02060, Doc. #10, Exhibit A].

4.      According to the Complaint, the exemption of the Debts from the Chapter 7 discharge imposes an undue hardship on the Plaintiff (Complaint ¶ 17) pursuant to 11 U.S.C. § 523(a)(8)(A)(i).

5.      The Plaintiff is approximately sixty-six years old and currently resides in Albuquerque, New Mexico.  [Adv. No. 13-02060, Doc. #19-3, Exhibit 30J].  She is unemployed as a result of various physical disabilities.[3]  She retired from Guilford County Schools in June of 2014 after being on short-term disability. [Adv. No. 13-02060, Doc. #19-2, Exhibit 29N].

6.      Between August 2005 and August 2008, the Plaintiff received $48,255.94 (the "Total Principal") in student loans while pursuing a Master's degree in Special Education at the University of North Carolina at Greensboro.  [Adv. No. 13-02060, Doc. #19-3, Exhibit 30F;

---

[3] These disabilities include: chronic fatigue syndrome, obstructive sleep apnea, walking issues, depleted enzymes, hypothyroidism, Reynaud's Syndrome, and high levels of metal in the Plaintiff's blood. [Adv. No. 13-02060, Doc. #19-3, ¶ 13].

Doc. #19-8, Exhibit 47E]. These loans, which have accrued interest and now constitute the Debts, were made by College Foundation Inc. ("CFI"). The loans were backed by the United States Government, and the Plaintiff executed a Federal Stafford Loan Promissory Note on June 5, 2005. [Adv. No. 13-02060, Doc. #19-8, Exhibit 2A].

7.      The Plaintiff worked as a teacher at Southeast Guilford High School in Greensboro, North Carolina, while pursuing her Master's degree. Of the Total Principal, $31,925.04 constituted student loan refunds (the "Refunds") that were not applied to the Plaintiff's tuition charges. [Adv. No. 13-02060, Doc. #19-9, Exhibit #1; Doc. #19-8, ¶4]. Instead, the Plaintiff used the Refunds for living expenses and to supplement her income, particularly during the summer months in which she was not working as a teacher. The Plaintiff contributed $19,749 to charity between 2006 and 2013. [Adv. No. 13-02060, Doc. #19-3, Exhibit 30E]. The Plaintiff graduated with her Master's degree in Education in 2011. [Adv. No. 13-02060, Doc. #19-2, Exhibit 29L].

8.      The Debts were originally serviced by CFI. On October 30, 2013, CFI transferred the entirety of its rights and interests in the Debts to the Defendant. [Adv. No. 13-02060, Doc. #10, Exhibit A]. As of October 2014, the outstanding amount due on the Debts totaled over $59,000 with interest. [Adv. No. 13-02060, Doc. #19-8, ¶33].

9.      The Plaintiff entered into the Income-Based Repayment ("IBR") Program in 2013. [Adv. No. 13-02060, Doc. #19-11, Exhibit #19]. She began making payments under the IBR Program in April of 2013. [Adv. No. 13-02060, Doc. #19-8, ¶31]. Under this program, the Plaintiff made monthly payments, based on her income, of $133.31 towards the Debts. At the time, the Plaintiff was receiving short-term disability income that totaled $26,813.02 annually. [Adv. No. 13-02060, Doc. #19-11, Exhibit 5H].

10.    The Plaintiff's payments on the Debts total $11,416.04. Of this, the Plaintiff paid $10,349.56 prior to filing the Complaint. [Adv. No. 13-02060, Doc. #19-8, ¶25].

11.    In June of 2014, the Plaintiff experienced a significant decrease in income when she retired and ceased to receive short-term disability payments.  Her approximate current monthly income as provided in answers to interrogatories consists of Social Security benefits and state retirement benefits of approximately $1,645.91.  [Adv. No. 13-02060, Doc. #19-3, Exhibit #30C].  She receives $820.00 per month in Social Security and $825.91 per month from Guilford County Schools.  As of September 29, 2014, as stated also in interrogatories, the Plaintiff's approximate expenses totaled $1,417.00.  [Adv. No. 13-02060, Doc. #19-4, Exhibit #30P].  The Plaintiff's current annual income totals $19,750.92.

12.    The Plaintiff contends that she does not expect her income to increase in the future due to limited employability.  [Adv. No. 13-02060, Doc. #19-3, Exhibit #29T, ¶17].

13.    The Complaint asserts that: (i) the Debts impose an undue hardship upon the Plaintiff and (ii) the Debts should be discharged accordingly under Section 523(a)(8) of the Code.  (Complaint ¶ 17).

## DISCUSSION

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Although a debtor seeking discharge of student loans bears the burden of proving an undue hardship, 11 U.S.C. § 523(a)(8), in considering a motion for summary judgment, the Court must construe the "facts and inferences drawn therefrom in the light most favorable to the non-moving party."  Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d

408, 418 (4th Cir. 2001). The party moving for summary judgment has the initial burden of proving the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. Celotex, 477 U.S. at 323. Once this initial burden has been met, the nonmoving party must then set forth specific facts sufficient to raise a genuine issue for trial. Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Without weighing the evidence or making findings of fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Here, the moving party must demonstrate an absence of any genuine dispute as to any material fact where a material fact is one of those necessary to establish the elements of the cause of the action. Id. at 248. Furthermore, in order to be entitled to summary judgment, the uncontested facts as established by the movant must entitle the movant to judgment. In re Smith, 231 B.R. 130, 134 (Bankr. M.D. Ga. 1999) (when Trustee's statement of facts, though undisputed, came up short of establishing that a preferential transfer occurred, the court could not grant summary judgment; it is the movant's burden to establish all facts necessary to prevail under substantive law). Finally, "[a]lthough the burden is on the Debtor to establish that the student loan debt is dischargeable, the burden is on the Defendant as the moving party to establish an entitlement to summary judgment that the debt is excepted from discharge." In re Macon, Bankr. Case No. 12-42846-PWB, Adv. Pro. No. 13-4014, 2014 WL 5080410 (Bankr. N.D. Ga. October 6, 2014).

## Motion for Summary Judgment

### I.     Dischargeability of Educational Loan Debts Based on the Brunner Standard

In a Chapter 7 bankruptcy case, educational loan debts are excepted from discharge, "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."[4] 11 U.S.C. § 523(a)(8)(A)(i).  The term "undue hardship" is not defined in the Code.   As a result, courts have developed various standards and tests to establish when excepting an educational loan debt from discharge would impose an "undue hardship" on an individual Debtor.   The Second Circuit first articulated a three-pronged approach in considering the meaning of "undue hardship" in Brunner v. New York State Higher Educ. Servs. Corp.[5]  831 F.2d 395 (2d. Cir. 1987).  The Fourth Circuit formally adopted this three-pronged analysis, the "Brunner test," in 2005. Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 398 (4th Cir. 2005).  In adopting the Brunner test, the Fourth Circuit explained that "[s]ince Congress did not provide express standards to guide the undue hardship analysis, the Brunner test best incorporates the congressional mandate to allow discharge of student loans only in limited circumstances." Id. at 400.

Undue hardship is found only if a debtor can prove all three of the required prongs by a preponderance of the evidence.  In re Frushour at 400 (4th Cir. 2005).  The debtor must demonstrate:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is

---

[4] The full statutory provision reads: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents for – (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit . . . ." 11 U.S.C. 523(a)(8)(A)(i).

[5] Since its creation by the Second Circuit in 1987, the Brunner test has been adopted by the Third, Fourth, Fifth, Sixth, Seventh, Tenth, and Eleventh Circuit Courts of Appeals. Pa. Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F. 3d 298, 307 (3d Cir. 1995); Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F. 3d 393 (4th Cir. 2005); U.S. Dept. of Educ. V. Gerhardt (In re Gerhardt), 348 F.3d 89, 91 (5th Cir. 2003); Oyler v.Educ. Credit Mgmt. Corp. (In re Oyler), 397 F.3d 382 (6th Cir. 2005); Roberson v. Illinois Student Assistance Corp. (In re Roberson), 999 F.3d, 1132, 1135 (7th Cir.1993); Educ. Credit Mgmt. Corp v. Polleys (In re Polleys), 356 F.3d1302, 1309 (10th Cir. 2004); Hemar Ins. Corp. of Am. v. Cox (In re Cox), 338 F.3d 1238 (11th Cir. 2003).

likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d at 396.  In applying the Brunner test to a motion for summary judgment, the Defendant, as the movant, must establish material facts about which there are no genuine issues, which would prevent the Debtor from meeting its burden at trial with respect to at least one of the three prongs.  None of the facts offered by the Defendant accomplishes this requirement.

## II. First Brunner Prong: Can the Plaintiff Maintain a Minimal Standard of Living if Required to Repay the Debts?

The first prong of the Brunner test requires a court to determine whether a Debtor can maintain a minimal standard of living if required to repay his student loan debts.  The analysis demands a case-by-case analysis of a debtor's income as compared to his expenses.  Matthess v. U.S. Dept. of Educ., 2000 WL 33673763, at *1 (Bankr. M.D.N.C. 2000).  The Fourth Circuit instructs that "[a] court should . . . examine the debtor's standard of living, 'with a view toward ascertaining whether the debtor has attempted to minimize expenses of himself and his dependents.'"  U.S. Dep't of Health & Human Servs. v. Smitley, 347 F.3d 109, 117 (4th Cir. 2003) (internal citations omitted).  A debtor's living situation and expenses are a key part of the minimal expenses analysis.  At its core, a minimal standard of living necessitates inquiry as to whether the "debtor's need for care, including food, shelter, clothing, and medical treatment are met."  Salinas v. United Student Aid Funds, Inc., 240 B.R. 305 (Bankr. W.D. Wis. 1999).

Plaintiff's income and expenses have fluctuated since filing her Petition.  The Motion for Summary Judgment proposes to use the earnings Plaintiff currently receives from retirement benefits as income and does not dispute this amount for the purpose of this Motion for Summary Judgment.  [Adv. No. 13-02060, Doc. #19, ¶ 10].  Defendant also presents the Plaintiff's most recently approximated monthly expenses as provided in interrogatories of $1,417.00.  [Adv. No.

13-02060, Doc. #19, ¶ 14]. Factors about Plaintiff's living situation, as stated in the Response and numerous times in interrogatories, raise significant doubt that Plaintiff is currently maintaining a minimal standard of living while minimizing her expenses, much less that she would be able to meet minimal standard of living requirements if required to repay the Debts. The Plaintiff reports to currently reside with a friend in New Mexico. She contributes $300.00 per month to her friend's household for rent and utilities. [Adv. No. 13-02060, Doc. #19, Exhibit 30N ¶25]. The sustainability of this arrangement is presently unclear, and whether this arrangement presently would allow the Debtor to maintain a minimal standard of living is unclear. See id. The Plaintiff contends that, if she were to seek her own housing on the private market, her rent and utility expenses would be considerably higher. Additionally, Plaintiff predicts her current medical expenses to increase due to the worsening of medical conditions keeping her from employment.

The Defendant counters that the Plaintiff may repay the loans and avoid undue hardship by seeking one of two repayment options: (1) to resume monthly payments of $133.31; or (2) enter the William D. Ford Program, in which the Plaintiff's required monthly payment on the Debts would be $0.00. [Adv. No. 13-02060, Doc. #19-8, ¶40]. The Defendant asserts that either of these options would afford the Plaintiff the ability to maintain a minimal standard of living while repaying the Debts. This contention, however, is insufficient to entitle the Defendant to summary judgment.

Even if the Court were to assume that the Plaintiff currently would qualify for either of these repayment options, the availability of these options is insufficient to entitle the Defendant to judgment at this stage. The Plaintiff previously participated in an IBR program, in which her monthly payments on the Debts amounted to $133.31. The Defendant contends that the Plaintiff

could resume these payments, which would leave her with a monthly budgetary surplus of approximately $95.00. The Defendant's analysis of the Plaintiff's ability to resume Income-Based Repayments, however, is based on the Plaintiff's current expenses. Her current expense statement reflects her $300.00 rent payment and does not include any provision for increased medical costs.  Even if the Court accepted the current income amounts as suggested by the Defendant to be Plaintiff's income amounts, they do not conclusively establish for purposes of summary judgment that the Plaintiff will be able to maintain a minimal standard of living if she is required to pay $133.31 per month on the Debts.

Alternatively, the Defendant contends that the Plaintiff's participation in the William D. Ford Program, in which her monthly repayment amount would be $0.00, cannot and will not affect the Plaintiff's ability to maintain a minimal standard of living.  See In re Greene, 484 B.R. 98, 120 (Bankr. E.D. Va. 2013) (finding that "[t]he resulting mathematic reality is that the present required monthly payment of zero on the Student Loan does not impact [Debtor's] ability to maintain a minimal standard of living.").

This Court cannot agree that requiring no payment constitutes "repayment."  This Court finds that accepting the concept of a zero payment as constituting "repayment," as asserted by the Defendant and recognized by other courts, see, e.g., id., at 111-116 (concluding that eliminating a zero repayment option would effectively preclude an analysis of the first Brunner prong and therefore the existence of the opportunity to pay zero repayment is instead considered as a factual circumstance in the application of Brunner); Booth v. United States Department of Education (In re Booth), 410 B.R. 672 (Bankr. E.D.Wash. 2009) (distinguishing the undue hardship analysis from the administrative application of the income contingent plan), effectively

eliminates the hardship discharge provision for student loans for those most likely to be entitled to it.

The debtor's choice to enter into an income based repayment plan under which she is not required to may any payments potentially affects both whether the debtor is able to maintain a minimal standard of living if she "repays" her student loans, and whether she has made a good faith effort to repay by simply agreeing to pay nothing. Recognizing that paying nothing cannot possibly affect a debtor's ability to maintain a minimal standard of living, the courts above conclude that the availability of a zero payment plan necessarily demonstrates that a debtor may repay her loans without affecting her ability to maintain a minimal standard of living. See In re Greene, 484 B.R. at 111-112; In re Markwood, 2014 WL 5573437, at *3 (N.D. W.Va 2014).

This Court refuses to jump the logical chasm necessary to conclude that no payment constitutes repayment, regardless of the title that the lenders choose to give to a program that excuses the debtor from repaying her loans. The Brunner test specifically requires that the Court determine whether the debtor would be able to maintain a minimal standard of living if forced to "repay" her student loans. Brunner, 831 F.2d at 396. Participation in such a "repayment" program in which the Plaintiff's monthly payment is zero is not repayment at all; rather, the loan continues to accrue interest on the principal without any repayment. At the end of the twenty-five year period, the Plaintiff's loans may be forgiven, but that amount, on which interest has been accruing, may become taxable as income. See 26 U.S.C. § 61(a)(12); 26 U.S.C. § 108(f); see also In re Geyer, 344 B.R. at 132-33.

Those debtors whose incomes are low enough to qualify for income-based repayments of $0.00 likely are the very individuals the undue hardship exception for student loans is meant to

assist.[6] Comm'n on the Bankr. Laws of the U.S., Report of the Comm'n: Part II, H. Doc. No. 93-137, at 140–41 (1st Sess. 1973). Obtaining a discharge from a loan of educational debt intentionally requires satisfaction of an unusually high bar, in order to ensure the ongoing viability of various student loan programs. Comm'n on the Bankr. Laws of the U.S., Report of the Comm'n: Part I, H. Doc. No. 93-137, at 176–77 (1st Sess. 1973). Nonetheless, Congress recognized that exceptional circumstances, "not reasonably within [a debtor's] power," can necessitate and permit a discharge of educational debt. Comm'n on the Bankr. Laws of the U.S., Report of the Comm'n: Part II, H. Doc. No. 93-137, at 135–36 (1st Sess. 1973). Qualifying for a $0.00 repayment amount certainly indicates difficult financial conditions for an individual debtor, which may be due to such extraordinary situations, which the Debtor will be entitled to demonstrate if able at trial. Regardless, the availability of a "repayment" plan with no payments does not constitute repayment of the loans without imposing an undue hardship which will entitle the Defendant to summary judgment in this case.

Alternatively, the Defendant contends that the Plaintiff could resume making monthly payments of $133.31 towards the Debts under an income-based repayment plan. The record before the Court is insufficient to establish the feasibility of such a payment as a matter of law, and the parties will be entitled to put on evidence at trial regarding these issues, primarily through a review of the Plaintiff's income, expenses, and possible future changes of both.

---

[6] The Commission on the Bankruptcy Laws of the United States was comprised of "three members appointed by the President of the United States . . . two Members of the Senate . . . two Members of the House of Representatives . . . [and] two [individuals] appointed by the Chief Justice of the United States." Pub. L. No. 91–354 § 2(a) (1970). The Commission "was formed to study, analyze, evaluate, and recommend changes in the substance and administration of the bankruptcy laws of the United States." Kenneth N. Klee, Legislative History of the New Bankruptcy Law, 29 DePaul L. Rev. 941, 943 (1979).

**III. Second <u>Brunner</u> Prong: Do Additional Circumstances Indicate that the Plaintiff's Inability to Repay the Debts is Likely to Exist for the Repayment Period of the Student Loans?**

The Fourth Circuit considers the second prong to be the "heart of the <u>Brunner</u> test." <u>In re Frushour</u>, 433 F.3d at 401.  It is "prospective in nature," as a court should look for "exceptional circumstances beyond the debtor's current situation" in determining the likelihood of a Plaintiff's continued inability to repay his or her student loan debts.  <u>Id.</u>  These additional circumstances must be "likely to persist" for a large portion of the Debtor's payment period.  <u>Id.</u>  (citing <u>Brunner</u>, 831 F.2d at 396). This prong requires the debtor to prove "a total incapacity now and in the future to pay [her] debts for reasons not within [her] control." <u>Rappaport v. Orange Savings Bank (In re Rappaport)</u>, 16 B.R. 615, 617 (Bankr. D.N.J. 1981).  The circumstances must be severe enough to "render it unlikely that the debtor will ever be able to honor [his] obligations." <u>Burton v. Educ. Credit Mgmt. Corp. (In re Burton)</u>, 339 B.R. 856, 870 (Bankr. E.D. Va. 2006) (citing <u>Love v. United States (In re Love)</u>, 33 B.R. 753, 755 (Bankr. E.D. Va. 1983)).

In short, the totality of a Debtor's circumstances must establish a "certainty of hopelessness" in regards to the prospect of the Debtor paying her student loan debt in the future. <u>In re Frushour</u>, 433 F.3d at 401 (citing <u>Brightful v. Pa. Higher Educ. Assistance Agency</u>, 267 F.3d 324, 328 (3d Cir. 2001)); <u>Spence v. Educ. Credit Mgmt. Corp. (In re Spence)</u>, 541 F.3d 538, 544 (4th Cir. 2008). Given its demanding standard, this prong requires fact-intensive analysis.  Many factors can constitute an "additional circumstance" beyond the Debtor's current situation and control. These include, but are not limited to, the age of the Debtor, the number of dependents a Debtor has, medical conditions, and a lack of usable job skills.  <u>Oyler v. Educ. Credit Mgmt. Corp.</u>, 397 F.3d 382, 386 (6th Cir. 2005).

In this case, genuine issues of material fact exist regarding circumstances indicative of the Plaintiff's inability to repay the Debts in the future, including how the prognosis of the Plaintiff's health and disability impacts her employment possibilities and income potential. The Fourth Circuit specifically recognizes that "illness [or] disability" may contribute to a Debtor's inability to repay his or her loans in the future. In re Frushour, 433 F.3d at 401 (citing Oyler, 397 F.3d at 386. This standard encompasses ongoing medical issues. Id. However, "substantial and credible evidence" or "corroborating evidence" is required at trial for a Debtor to sustain his or her burden in establishing a medical issue as an additional circumstance under this prong. In re Greene, 484 B.R. at 122. In this case, the Plaintiff's current medical condition and disability comprise a genuine issue of material fact, as the last verified documentation of her health problems is from 2013.[7]   In 2012, the Plaintiff's physician attested that the Plaintiff was "temporarily" and "totally disabled." [Adv. No. 13-02060, Doc. #19-8, Exhibit 47A]. Further, the Plaintiff's physical therapist explained that her "intractable pain in both feet . . . has had a very debilitating effect on her quality of life." [Adv. No. 13-02060, Doc. #19-8, Exhibit 46]. The persistence of the Plaintiff's alleged medical conditions and severity of the Plaintiff's disability remain unclear from the facts presented by the Defendant, but as alleged and evidenced by the Plaintiff, including one medical report and an attestation, the illnesses evidenced could persist and in fact worsen as a chronic condition. Therefore, the record before the Court contains sufficient evidence to establish a genuine issue of fact whether Plaintiff's current illnesses will prevent her from working indefinitely and therefore prevent her from making repayments on the Debts.

---

[7] Dr. Elizabeth Wanek, MD provided a Medical Report for Disability Eligibility Review on May 7, 2012 indicating that the "principal causes" of the Plaintiff's disability included obstructive sleep apnea, hypothyroidism, and fatigue. [Adv. No. 13-02060, Doc. #19-8, Exhibit 47E]. Michael T. Gross, PT, PhD, FAPTA submitted documentation of the Plaintiff's intractable foot pain and inability to walk or stand for long periods of time on August 15, 2013.  [Adv. No. 13-02060, Doc. #19-8, Exhibit 46].

Plaintiff also asserts that she is at approximately sixty-six years old and does not "foresee becoming employable, not including ageism." [Adv. No. 13-02060, Doc. #19-3, Exhibit #29T, ¶17]. Age may also be considered as one factor in evaluating the second <u>Brunner</u> prong, although it is rare that a court will accept age as an additional circumstance hindering the debtor's ability to repay his or her loans. <u>See, e.g.</u>, <u>Spence v. Educ. Credit Mgmt. Corp. (In re Spence)</u>, 541 F.3d. 538, 544 (4th Cir. 2008) (denying undue hardship discharge and finding that sixty-six year old debtor's age did not constitute an additional circumstance, as "neither [the debtor's] ailments nor any other age-related health problems affect her ability to work full time."). Nevertheless, the facts offered by the Defendant are insufficient to a support judgment that the Debtor cannot demonstrate a certainty of hopelessness. The Plaintiff has no dependents and a wide range of job experience, holding both a Bachelor's and Master's degree, indicating possible employability and income potential. The facts offered by the Defendant, however, do not establish for purposes of summary judgment that the Plaintiff will not be able to demonstrate at trial that her situation currently preventing her from employment is hopeless.

## IV. Third Brunner Prong: Has the Plaintiff Made Good Faith Efforts to Repay the Loans?

The third prong of the <u>Brunner</u> test requires a fact-intensive inquiry into whether the debtor has made good faith efforts to repay the student loan or loans. Good faith is not explicitly defined in the Code. Several factors can establish the debtor's good faith in this context, but no single factor is dispositive. <u>In re Burton</u>, 339 B.R. at 882 (citing <u>Hall v. U.S. Dep't. of Educ. (In re Hall)</u>, 293 B.R. 731, 737 (Bankr. N.D. Ohio 2002) (outlining a "compendium of considerations in determining whether a debtor has made a good faith effort to repay a student loan"). This Court finds that genuine issues of material fact exist as to whether the Plaintiff has made good faith efforts to repay the loans. More precisely, the Defendant has not presented any

facts establishing as a matter of law that the Plaintiff will not be able to demonstrate at trial that she has made good faith efforts to repay the loans.

The Fourth Circuit has outlined how a court should analyze good faith under the third Brunner prong.  See In re Frushour, 433 F.3d at 402; see also Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko), 515 F.3d 319, 324 (4th Cir. 2008).  In that case, the Fourth Circuit stated that "good faith consists of the debtor's 'efforts to obtain employment, maximize income, and minimize expenses.'" In re Frushour, 433 F.3d at 402. (citing O'Hearn v. Educ. Credit Mgmt. Corp., 339 F.3d 559, 564 (7th Cir. 2003)).  Additionally, factors beyond the Debtor's control must cause the hardship.  Id.

There is evidence on the record which indicates Plaintiff has made an effort to minimize expenses, including moving to New Mexico and living with a friend, contributing only $300.00 to the household.  It is unclear as to the Plaintiff's efforts to find employment, if possible, and maximize her income.  It appears that the Plaintiff's move to New Mexico was motivated by her desire to minimize her expenses, but it is uncertain whether this living situation is permanent. The movant has not demonstrated uncontested facts which would require a finding that the Debtor has not made an effort to minimize expenses.  This initial good faith inquiry therefore comprises a genuine issue of material fact that precludes summary judgment.

Entry into a loan consolidation or repayment program can constitute evidence that the Debtor has made a good faith effort to repay her loans, and the failure to enter into such a program can indicate the lack of a good faith effort to repay. See Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko), 515 F.3d 319, 324 (4th Cir. 2008).  More specifically, "the debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component in the good faith inquiry." In re Frushour, at 402.  The participation in such a program

demonstrates the debtor's seriousness in ultimately repaying the obligation.  See In re Robinson, 416 B.R. 275 (Bankr. E.D. Va. 2009).  In this case, the Plaintiff applied to consolidate six of her loans into one on June 29, 2006.  [Adv, No. 13-02060, Doc. # 19-11, Exhibit 5A].  She received further information about consolidation at the beginning of this Adversary Proceeding [Adv. No. 13-02060, Doc. #19-8, Exhibit 43].  The Defendant also provided the Plaintiff with information regarding income-based repayment and income-contingent repayment plans in November of 2013.  [Adv. No. 13-02060, Doc. #19-8, Exhibit 44].  The Plaintiff applied to enter an income-based repayment plan in January of 2013.  [Adv, No. 13-02060, Doc. # 19-11, Exhibit 5F].  She made payments of $133.31 on the Debts under said income-based repayment plan from April of 2013 until June of 2014.  [Adv. No. 13-02060, Doc. #19-9, ¶25, ¶32].  Therefore, there is sufficient evidence on the record to create an issue of material fact as to the Plaintiff's good faith efforts to repay her loan due to her application to, and participation in, these loan repayment plans.

Her actual payments on the student loans serve as another factor that may evidence good faith efforts by the Debtor to repay.  Thompson v. N.M. Student Loan Guarantee Corp. (In re Thompson), 329 B.R. 145, 180 (Bankr. E.D. Va. 2005) (citing Hall v. U.S. Dep't. of Educ. (In re Hall), 293 B.R. 731, 737 (Bankr. N.D. Ohio 2002)).  These payments can indicate the seriousness with which a debtor takes her loans.  Id.  The record in this case indicates that the Plaintiff has made sixty-one payments totaling $10,349.56 prior to the filing of this Adversary Proceeding, since August of 2005.  [Adv. No. 13-02060, Doc. #19-9, ¶25].  The Plaintiff paid a total of $1,066.48 following the commencement of this proceeding.  These payments further indicate the existence of an issue of material fact with respect to the Plaintiff's good faith efforts to repay her loans in this case.

The Defendant claims that the Plaintiff's "substantial charitable contributions" totaling $19,749 between 2006 and 2013 "negligently contributed" to her current situation and constitute bad faith. The Defendant also asserts that the Plaintiff routinely contributed to charity while making minimal payments on the Debts.  The Plaintiff explains that she "belongs to a religion" and contributes "to [her] faith on a regular basis."  [Adv. No. 13-02060, Doc. #19-8, Exhibit 30E, ¶5].  Further, the Plaintiff intends to continue to donate $50.00 per month to charity.  Adv. No. 13-02060, Doc. #19-5, Exhibit 30P].  Further, the Defendant asserts that the Plaintiff's retention of refunds totaling over $31,000 between May 2005 and December 2008, received while she earned a regular income from Guilford County Schools, demonstrates bad faith.  While the facts regarding the Plaintiff's charitable contributions are undisputed, they are insufficient in and of themselves to establish bad faith as a matter of law for purposes of summary judgment in this case.

Finally, a Debtor's contact and negotiation with his loan servicer may indicate good faith. Floyd v. Educ. Credit Mgmt. Corp., 54 F. App'x 124 (4th Cir. 2002) (unpublished).  This includes regular updates by the Debtor to the loan servicer about the Debtor's financial situation. Id.  Exploring other payment options, such as partial payments, and negotiating forbearances also demonstrate that the debtor treats his obligation to repay the loan sincerely.  Id.  In this case, the Plaintiff claims that she "always stayed in touch with College Foundation [her loan servicer], with unfolding situations, but [she] was never informed of any further options."  [Adv. No. 13-02060, Doc. #19-3, Exhibit #30I].  The record includes a letter from the Plaintiff to CFI in January of 2013 exhibiting this contact.  [Adv. No. 13-02060, Doc. #19-10, Exhibit #5J]. Therefore, the Plaintiff's application to, and participation in, repayment programs, her payments on the loans, and her contact with the College Foundation, among other factors set forth herein,

are sufficient to create material issues of fact regarding the Plaintiff's good faith efforts to repay her loans.

The issue of Plaintiff's good faith is a mixed question of law and fact.  See Krieger v. Educational Credit Management Corp., 713 F.3d 882, 884 (7th Cir. 2013).  Moreover, "'undue hardship,' [is] a case-specific, fact-dominated standard . . . ."  Id.  Under these circumstances, the facts currently in the record are insufficient to establish for purposes of summary judgment that the Plaintiff lacked good faith or that the repayment of her student loans will not cause her undue hardship.

## CONCLUSION

For the reasons set forth herein, the Court has entered an Order DENYING the Defendant's Motion for Summary Judgment.

**[END OF DOCUMENT]**